UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                   :
                                            :
                                            :            18 Cr. 347 (RMB)
            - against -                     :
                                            :            **DECISION & ORDER**
CARLOS ECHEVERRIA,                          :
                                            :
                        Defendant.          :
------------------------------------------------------------x

Having reviewed the record herein, including without limitation: **(1)** Defendant Carlos Echeverria's pro se motion, dated May 18, 2020, requesting compassionate release and transfer to home confinement. Def. Mot. at 3. Echeverria, who is 39 years old, contends that: "there exist[] extraordinary and compelling reasons to grant [his] motion in that inmates at the Miami Federal Prison Camp are uniquely at risk of contracting the [COVID-19] virus due to excessively crowded living conditions in which they sleep three (3) feet or less apart and are exposed to a lack of medical care." Id. at 2-3. Echeverria makes no mention whatsoever of any underlying medical conditions he might have justifying early release from prison; **(2)** the Government's response, dated July 20, 2020, opposing Echeverria's release and contending: (i) "Echeverria does not establish 'extraordinary and compelling reasons' for a reduced sentence"; and (ii) "the factors set forth in 18 U.S.C. § 3553(a) weigh against releasing Echeverria," including the fact that early release would fail "to reflect the seriousness of Echeverria's offense." The Government also points out that "the BOP generally, and FCI Miami and the Camp specifically, are actively managing the risks presented by COVID-19" and have adopted a multi-phase "action plan to mitigate the transmission of COVID-19." See Gov't Opp. at 1, 8, 19; **(3)** Echeverria's reply, dated August 7, 2020, which was filed by attorney Frank Andrew Prieto, and asserts a new argument, *i.e.*, that Echeverria "suffers from hypertension, low white blood cell counts, and low platelet

1

counts." See Def. Reply at 5. Echeverria's reply attaches a "Medical Certificate" from a Guatemala-based physician who states that he "treated [Echeverria in his] . . . private clinic during 2015-2016 [in Guatemala]." See Def. Reply Ex. B; and **(4)** the Government's supplemental opposition, dated August 17, 2020, pointing out that: (i) "because [Echeverria] failed to raise . . . medical conditions in his original motion, he cannot rely on them as a basis for compassionate release"; and (ii) in any case, Echeverria's medical records from the Bureau of Prisons ("BOP") "do not reflect that [Echeverria] suffers from any of these . . . medical conditions." See Gov't Suppl. Opp. at 2, **the Court hereby denies Echeverria's motion for compassionate release, as follows:**[1]

I. **Background**

On June 11, 2019, Echeverria, who as noted is 39 years of age, pleaded guilty to conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h); and to money laundering, in violation of Title 18, United States Code, Section 1956(a)(3)(A). See Plea Hr'g Tr. at 21:13-17, 26:8-17. Echeverria confirmed that he assisted "narcotics dealers who needed to receive their drug proceeds [by] laundering the narcotics proceeds . . . through various bank accounts in the United States." See Def. Sentencing Submission at 1-2; see also Plea Hr'g Tr. at 21:19-22:15, 23:5-8. On October 15, 2019, the Court sentenced Echeverria to 72 months' imprisonment to be followed by 3 years of supervised release, having determined, among other things, that "[Echeverria's] conduct was extremely serious." See Sentencing Tr. at 6:25-7:2, 28:24-29:4.

Echeverria is incarcerated at FCI Miami Camp, a minimum-security satellite camp facility in Florida. See Gov't Opp. at 3. As of December 22, 2020, Echeverria has served approximately 29 months of his 72-month sentence. See Gov't Opp. at 2. He is scheduled for release on September 7, 2022. Id.

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

On June 24, 2020, Echeverria wrote to the Warden of FCI Miami requesting to be granted a reduction of his sentence to time served "due to the devastating proven consequences to those infected by COVID-19." <u>See</u> <u>Def. Reply Ex. C</u>.

## II. **Legal Standard**

18 U.S.C. § 3582(c)(1)(A) provides in part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community . . .," and "the reduction is consistent with this policy statement." Application Note 1 states in part that extraordinary and compelling reasons may exist if: **(1)** "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or **(2)** "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; or **(3)** the circumstances involve (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; or **(4)** "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's

case an extraordinary and compelling reason other than, or in combination with, the reasons [previously] described."

### III. Findings

The Court's findings are as follows:

1. Echeverria is deemed to have exhausted his administrative remedies. *United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020). Over 30 days have lapsed since Echeverria submitted his application for compassionate release to the FCI Miami Warden, and he has not received a reply. See Def. Reply Ex. C; Gov't Suppl. Opp. at 2. Indeed, "[t]he BOP informed the Government that it had inadvertently overlooked [Echeverria's] June 24 email." See Gov't Suppl. Opp. at 2.

2. In his May 2020 (main) brief, Echeverria does not mention **any** health or medical conditions that would constitute "extraordinary and compelling reasons" for early release. Only in the reply brief does Echeverria contend that he "suffers from hypertension, low white blood cell counts, and low platelet counts." See Def. Reply at 4. In *United States v. Daugerdas*, 2020 WL 4931988 (S.D.N.Y. Aug. 18, 2020), the court stated that "courts typically do not consider arguments that are raised for the first time in a reply brief." *Id.* at *3 n.6 (citation omitted).
Along with the reply, defense counsel attached a "Medical Certificate" in Spanish (with an English translation) prepared by Dr. Orozco and stating that Echeverria was diagnosed by him as having "hypertension . . . low count of White blood cells, and low platelets" while being treated at a private clinic in Guatemala in 2015-2016. See Def. Reply Ex. B.

3. The Government's response enclosed and was supported by Echeverria's BOP medical records reflecting his physical examinations at FCI Miami between July 2018-June 2020. These records make clear that: (i) Echeverria was never diagnosed at FCI Miami with hypertension; and (ii) Echeverria never mentioned or complained at FCI Miami of having a history of hypertension. On January 22,

2020, for example, Echeverria was asked whether he had a "History . . . [of] Hypertension," to which he responded, "[d]enied." See Gov't Opp. Ex. B at 9, 48; see also Gov't Suppl. Opp. at 2.

4. Echeverria's claim that inmates at FCI Miami are uniquely at risk of contracting COVID-19 "due to excessively crowded living conditions and . . . a lack of medical care" is vigorously disputed by the Government. See Gov't Opp. at 7 (quoting Def. Mot. at 3-4, 7). "[T]he BOP generally, and FCI Miami [] specifically, are actively managing the risks presented by COVID-19" and are following "a multi-point plan to battle COVID-19." See Gov't Opp. at 7. The Government points out that FCI Miami has adopted measures which include "securing inmates in their assigned cells or quarters; [] coordinating with the United States Marshals Service to significantly decrease incoming movement; . . . and affording limited group gathering." See Gov't Opp. at 7-8. The Government also argues that "medical services are indeed available at the Camp." Id. at 8.

The Court finds that, while COVID-19 is a serious concern at correctional and other congregate facilities generally, Echeverria has not met his burden of persuasion of "extraordinary and compelling reasons." See Gov't Suppl. Opp. at 2-3.

IV. **Analysis**

5. Echeverria's motion for compassionate release is denied principally on the following grounds:
   (i) Echeverria fails to establish that alleged FCI Miami prison conditions constitute "extraordinary and compelling reasons" for his early release;
   (ii) Echeverria fails to establish that he suffers from hypertension, low white blood cell counts, and low platelet counts and/or that these conditions constitute "extraordinary and compelling reasons" for early release;
   (iii) Echeverria's early release may pose a danger to the community; and
   (iv) the 18 U.S.C. § 3553(a) factors do not support Echeverria's early release.

6. **<u>No Extraordinary and Compelling Circumstances</u>**

   a) **<u>FCI Miami Prison Conditions</u>**

Echeverria fails to establish that FCI Miami prison conditions constitute an "extraordinary and compelling reason" for early release. And, it appears to the Court as though FCI Miami—as many other institutions in Florida and elsewhere—is endeavoring to confront and combat the COVID-19 pandemic. Echeverria, as noted, contends that FCI Miami inmates are "uniquely at risk of contracting the virus due to excessively crowded living conditions [in which] [s]ocial distancing is basically non-existent" and in which inmates "are exposed to a lack of medical care." See <u>Def. Mot.</u> at 3; see also <u>Def. Reply</u> at 3-4.

The Government argues persuasively that Echeverria has not established extraordinary and compelling circumstances to support early release. It points out the "precautions" the FCI Miami Camp has implemented, including measures to "significantly decrease incoming movement" throughout the facility and to "limit[] group gathering." <u>Id.</u> at 7-8. The Government also argues that "medical services are indeed available at the Camp, where sick call is conducted in the mornings, inmates advise staff if they have medical emergencies, and COVID-19 testing is available to inmates experiencing symptoms." <u>Id.</u> at 8. And, Echeverria's BOP records indicate that he was examined medically six times between July 2018 and June 2020.

Moreover, it seems likely that being in a camp setting, Echeverria has increased opportunity of being outdoors. See <u>FCI Miami Admission Handbook</u>, BOP – Federal Prison Camp Miami, at 49 (2013) (stating that Camp recreation yard hours are from sunrise to sundown year round); *see also United States v. Richard*, 2020 WL 4500670, at *3 (C.D. Ill. Aug. 5, 2020) ("[t]he defendant is housed in the [] Camp portion of the complex," where "the facilities are less crowded and provide more space to each individual than general housing facilities"); *United States v. Cherry*, 2020 WL 5868800, at *3

(D.N.J. Oct. 2, 2020) ("Defendant is located at the less dense Camp within [the prison complex], lowering the likelihood he will contract the virus."). Echeverria has made no showing that FCI Miami's plan and efforts to combat COVID-19 are uniquely inadequate or that the facility is unable adequately to treat him medically if he should become ill.

Other courts have specifically concluded that FCI Miami Camp has adopted measures to help protect against COVID-19. *See United States v. Ramirez-Vargas*, 2020 WL 6390077, at *6 (W.D.N.Y. Nov. 2, 2020). In *United States v. Espailla*t, 2020 WL 4284903, at *5 (S.D. Fla. July 27, 2020), the court denied compassionate release where "Defendant [] does not persuade the Court that current procedures in place or resources available at FCI Miami are insufficient to protect him."

**b) Echeverria's Medical Condition**

Even assuming, without deciding, that Echeverria had timely raised in his brief medical conditions of "hypertension, low white blood cell counts, and low platelet counts," he does not establish that such conditions are present or constitute "extraordinary and compelling reasons" in this case, as follows:

**(i)** While hypertension is considered a factor that can increase the risk of severe COVID-19 symptoms and is on the Centers for Disease Control and Prevention's ("CDC") list of COVID-19 risk factors, the evidence presented by Echeverria is insufficient to conclude that he currently suffers from hypertension. The "Medical Certificate" prepared by Dr. Allan Josué Orozco Orozco states only that Echeverria was diagnosed with hypertension in *2015-2016* while being treated at a private clinic in Guatemala. See Def. Reply Ex. B. Echeverria's more recent medical records from the BOP—covering medical exams between July 2018 and June 2020—do not reflect that Echeverria suffers from this medical condition. See Gov't Suppl. Opp. at 2; *see also United States v. Gray*, 2020 WL 3050730, at *3 (S.D.N.Y. June 8, 2020). And, there is, for example, no evidence of multiple high blood-pressure readings in Echeverria's records. See Gov't Opp. Ex. B.

In *United States v. Powers*, 2020 WL 5046886 (E.D. Mich. Aug. 26, 2020), the court stated that "[h]ypertension is typically diagnosed only after consistently high blood pressure readings on multiple occasions." *Id.* at *4. When questioned about his medical history during (at least) five relatively recent BOP physical examinations, Echeverria responded to the question whether he had any history of hypertension by indicating "denied." See Gov't Opp. Ex. B at 9, 36, 42, 48, 73; *see also United States v. Gutierrez*, 2020 WL 6260654, at *4 (D. Conn. Oct. 23, 2020).

**(ii)** And, even if Echeverria had timely raised this claim of hypertension, it should be noted that "hypertension alone does not constitute an extraordinary and compelling circumstance warranting compassionate release." Def. Reply at 5; *see United States v. Vassell*, 2020 WL 5441346, at *4 (S.D.N.Y. Sept. 9, 2020). In *United States v. Zavala-Velasquez*, 2020 WL 364058 (S.D.N.Y. July 6, 2020), the court held that "[w]hile the CDC lists ordinary hypertension . . . as a condition that might increase the risk of severe illness from COVID-19, absent evidence of more serious underlying medical conditions, Defendant's medical conditions are not severe enough to justify a sentence reduction." *Id.* at *2. Echeverria has presented no compelling evidence of serious underlying medical conditions.

**(iii)** Echeverria's BOP medical records do not reflect that Echeverria suffers from either low white blood cell or low platelet counts. See Gov't Suppl. Opp. at 2; *see also United States v. Ellis*, 2020 WL 6063840, at *4 (S.D. Ind. Oct. 14, 2020) ("The CDC also has not identified [a low platelet count] as a condition that might increase the risk of severe COVID-19 symptoms."); *United States v. Myrick*, 2020 WL 6128943, at *3 (E.D.N.Y. Oct. 19, 2020) (court "cannot reasonably find" that the fact that defendant has "a low level of . . . a type of white blood cell," absent more, "places him at high risk of serious illness").

7. **Danger to the Community**

Echeverria's early release from incarceration may pose a danger to the community. That is, Echeverria's crimes of conviction supported (facilitated) the widespread distribution of "ten kilograms of cocaine." See Gov't Sentencing Submission at 2; *see United States v. Seshan*, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020); *see also United States v. Ramos*, 2020 WL 3642050, at *3 (S.D.N.Y. July 6, 2020) ("The Court cannot find that [defendant] 'is not a danger to the safety of any other person or to the community,' as is required for compassionate release. [Defendant's] conduct in this case gravely endangered public safety."). The Court's finding of potential dangerousness is based upon several factors. First, Echeverria's money laundering and conspiracy to commit money laundering were carried out in aid of "narcotics trafficking." They were found by the Court to be "extremely serious." See Sentencing Tr. at 6:25-7:1. According to the Government, Echeverria laundered "approximately nine million dollars' worth of illegal narcotics proceeds, over a multi-year period, in concert with others. Echeverria did not merely participate in a few isolated money laundering instances. He regularly worked for narcotics traffickers, assisting them in moving money they earned through their drug dealing and thereby sustaining their narcotics trafficking (as well as facilitating their concealment of their illegal conduct)." Gov't Sentencing Submission at 4. "Moreover, Echeverria expressed interest in participating in even more laundering. . . . [He] was an eager and enterprising participant in money laundering, seeking out opportunities where available." Id. at 4.

Echeverria's criminal history category I, among other things, helped him gain a below-Guidelines sentence but this does not detract from the fact that his conduct was "extremely serious." Money laundering crimes that facilitate drug trafficking pose a danger to the community. *See Piervinanzi v.*

*United States*, 151 F. Supp. 2d 266, 273 (S.D.N.Y. 2001); *see also Giordano v. United States*, 32 F. Supp. 2d 640, 642 (S.D.N.Y. 1999).

In *United States v. Hidalgo*, 462 F. Supp. 3d 470 (S.D.N.Y. 2020), the defendant was convicted of money laundering related to narcotics trafficking activities. *Id.* at 475. The court denied defendant's motion for compassionate release at least in part because it found that: "the defendant remains a risk to the community . . . . The defendant's serious offense conduct, which he conducted over a sustained period of time, makes continued detention for the duration of the original term of imprisonment necessary to protect the community." *Id.*

Similarly, in *United States v. Santana*, 2020 WL 6799697 (S.D. Cal. Nov. 19, 2020), the defendant was convicted of conspiracy to commit money laundering pertaining to the transfer of millions of dollars in drug proceeds from the United States to Mexico and Colombia. *Id.* at *2. The court denied the defendant's motion for compassionate release, finding that his "actions resulted in the importation of vast amounts of cocaine and methamphetamine into the United States." *Id.* at *2; *see also United States v. Pedraza*, 2020 WL 4495463 (E.D. Ky. Aug. 4, 2020).

8. **18 U.S.C. § 3553(a) Factors**

Echeverria's Guidelines range was 135 to 168 months. At sentencing, the Court acknowledged Echeverria's low criminal history category and his efforts to assist the Government, even though the Government did not file a 5K1.1 letter on his behalf. See Sentencing Tr. at 24:22-24.

The Court is constrained to conclude that further sentence reduction would fail to satisfy the purposes of sentencing, which are "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *United States v. Garcia*, 460 F. Supp. 3d 403, 410 (S.D.N.Y. 2020); Sentencing Tr. at 27:15-28:5.

V.   **Conclusion & Order**

Defendant's motion for compassionate release [Dck. #67] is respectfully denied. The Government's request [Dck. #68] to file Exhibit B (BOP medical records) under seal is granted. *United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated:   New York, New York
         December 22, 2020

_____
**RICHARD M. BERMAN, U.S.D.J.**